UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

SHEAFEN KUO and TINA KUO,

                    Plaintiffs,

         -v-

GOVERNMENT OF TAIWAN and
MINISTRY OF NATIONAL DEFENSE
OF TAIWAN,

                    Defendants.

17-CV-10156 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

On December 28, 2017, Plaintiffs Sheafen Kuo and Tina Kuo filed this action against Defendants the Government of Taiwan and the Ministry of National Defense of Taiwan ("Ministry"), seeking damages for the uncompensated taking of Plaintiffs' family home in Taiwan. (Dkt. No. 1 "Compl." ¶¶ 4–5.) On April 12, 2018, the Court ordered Plaintiffs to show cause as to why the Complaint should not be dismissed for lack of subject matter jurisdiction, because the Complaint failed to satisfy the expropriation exception to the Foreign Sovereign Immunities Act ("FSIA"). (Dkt. No. 5.)

Plaintiffs have filed multiple submissions after the April 12, 2018 Order. (Dkt. Nos. 6–8, 12–13.) But Plaintiffs still have not adequately demonstrated a nexus between the property at issue and Defendants' commercial activity in the United States, as required by the FSIA's expropriation exception. 28 U.S.C. § 1605(a)(3). Accordingly, the Court lacks subject matter jurisdiction over Plaintiffs' claims, and the action must be dismissed.

**I.    Background**

The following facts are drawn from the complaint and are assumed to be true unless otherwise noted.

1

Plaintiffs Sheafen Kuo and Tina Kuo are United States citizens who claim ownership of real property in Taipei, Taiwan. (Compl. ¶ 4.) Plaintiffs' father, Shih Jian Kuo, purchased the real property in question, a unit of military housing, in 1951. (Compl. ¶¶ 4, 9–12.) Shih Jian Kuo owned the house until his death in October 1997, when Plaintiffs' mother, Kohn Yu Kuo, inherited the house. (Compl. ¶¶ 18–19.) Kohn Yu Kuo's ownership of the house continued until December 2004, when the Ministry informed Plaintiffs' mother that the house no longer qualified as a "resident military house" and reclassified her status from "resident military householder" to "illegal-occupied householder." (Compl. ¶¶ 20–22.)

In 2009, the Ministry sold the house, along with six other properties, to a developer for approximately $65 million. (Compl. ¶ 3(a).) As an "illegal-occupied householder," Plaintiffs' mother was entitled to payment for the house by the Ministry, although the required compensation was significantly less than the amount she would have received as a "resident military householder." (Compl. ¶ 27.) However, Plaintiffs claim that their family was never paid anything for the sale of the house. (Compl. ¶¶ 3(c), 28–29; Dkt. No. 6 at 2.) Plaintiffs' family brought suits in Taiwanese courts seeking compensation for the property, but Plaintiffs' efforts were ultimately unsuccessful. (Compl. ¶¶ 51–53.)

Proceeding *pro se*, Plaintiffs then filed this action against the Government of Taiwan and the Ministry, claiming that Defendants took real property from their family without compensation, and that the taking was actionable in this court under the FSIA's expropriation exception, 28 U.S.C. § 1605(a)(3). (Compl. ¶¶ 1, 3.)

On April 21, 2018, the Court issued an order directing Plaintiffs to show cause as to why the Court had subject matter jurisdiction. (Dkt. No. 5.) Specifically, the Order stated that the Complaint failed to adequately demonstrate subject matter jurisdiction under the expropriation

2

exception for two reasons: (1) the Complaint did not adequately allege that the property was taken in violation of international law, because it did not allege that Kohn Yu Kuo was anything other than a Taiwanese national; and (2) the Complaint did not adequately allege that the proceeds of the alleged expropriation are now present in the United States in connection with Defendants' commercial activity. (Dkt. No. 5 at 2–4.) Plaintiffs filed a memorandum in response to the April 21, 2018 Order, asserting that: (1) their mother was a U.S. citizen at the time the house was taken; and (2) the proceeds from the sale of the house are now in the United States as a product of trade and various other commercial activities. (Dkt. No. 6 at 3–6.)

Plaintiffs have attempted to serve Defendants, but service has not yet been effectuated. (*See* Dkt. Nos. 15–18.) Furthermore, Defendants have yet to appear, and they have not filed any response to Plaintiffs' Complaint or subsequent memoranda.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(h)(3), a court must dismiss an action *sua sponte* if the court determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). "A defendant's immunity from suit divests the Court of subject matter jurisdiction." *Georges v. United Nations*, 84 F. Supp. 3d 246, 248 (S.D.N.Y. 2015), *aff'd*, 834 F.3d 88 (2d Cir. 2016). Accordingly, if a court determines that defendants are immune from suit under the FSIA, it must dismiss the action. *See Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 287 (2d Cir. 2011); *Shakour v. Fed. Republic of Ger.*, 199 F. Supp. 2d 8, 14 (E.D.N.Y. 2002) (dismissing *sua sponte* claims against foreign state for plaintiffs' failure to satisfy FSIA exceptions). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

**III.    Discussion**

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 136 (2d Cir. 2012) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)). "Under the FSIA, 'a foreign state is immune from the jurisdiction of the courts of the United States and of the States except as provided' by certain statutory exceptions." *Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 602 (S.D.N.Y. 2016) (brackets omitted) (quoting 28 U.S.C. § 1604).

Plaintiffs contend that this Court has subject matter jurisdiction over their claims under the FSIA's expropriation exception. (Compl. ¶ 1.) This exception—also referred to as the "takings" exception—provides that a foreign state is not immune from suit in U.S. courts in a case

> in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

28 U.S.C. § 1605(a)(3). To successfully invoke this exception, "a plaintiff must demonstrate each of four elements": (1) rights in property are in issue; (2) the property was "taken"; (3) the taking was in violation of international law; and (4) the nexus requirement is satisfied. *Garb v. Republic of Pol.*, 440 F.3d 579, 588 (2d Cir. 2006).

The nexus requirement may be satisfied in one of two ways. The stricter version of the requirement is met if the expropriated property "is present in the United States in connection with a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(3). The more lenient version of the requirement is met if the expropriated property "is

4

owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States." *Id.* The stringency of the nexus requirement that applies in a given case depends on whether defendants constitute a "foreign state" or "an agency or instrumentality" of a foreign state. *Id.* at 589.[1]

The Court previously concluded, in the April 12, 2018 Order, that both the Government of Taiwan and its Ministry of National Defense are "properly treated as 'foreign state' defendants." (Dkt. No. 5 at 3.) As such, Plaintiffs must satisfy the nexus requirement that "sets a higher threshold of proof," *Garb*, 440 F.3d at 589, by demonstrating that the expropriated property "or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state," 28 U.S.C. § 1605(a)(3).

Plaintiffs contend that this nexus requirement is satisfied, because the Ministry

---

[1] The Ninth Circuit appears to disagree, however, taking the position that if plaintiffs can establish jurisdiction over an instrumentality under the more lenient nexus requirement of § 1605(a)(3), they can also exercise jurisdiction over the foreign state itself. *See Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 206 (2d Cir. 2016) (citing *Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1022, 1028–34 (9th Cir. 2010) (*en banc*)). But "some district courts in our Circuit have questioned the [Ninth Circuit's] reasoning." *Id.* (citing *Hammerstein v. Fed. Republic of Ger.*, No. 09 Civ. 443, 2011 WL 9975796, at *5 (E.D.N.Y. Aug. 1, 2011); *Freund v. Republic of Fr.*, 592 F. Supp. 2d 540, 561 (S.D.N.Y. 2008)). Moreover, the Second Circuit in *Garb* indicated that the stricter nexus requirement must be satisfied for foreign state defendants, whereas the more lenient requirement applies to agency or instrumentality defendants. 440 F.3d at 589. And the D.C. Circuit has clearly adopted the position that the stricter requirement must be satisfied to overcome the immunity of foreign state defendants. *De Csepel v. Republic of Hungary*, 859 F.3d 1094, 1107–08 (D.C. Cir. 2017).
  Some courts seem to view whether the stricter nexus requirement must be satisfied for foreign state defendants as an open question in this Circuit, notwithstanding *Garb*. *See Arch Trading Corp.*, 839 F.3d at 206 ("We do not reach the issue[.]"); *Freund*, 592 F. Supp. 2d at 561 n.10 (characterizing the relevant language in *Garb* as *dicta*). Insofar as they are correct, this Court holds that the immunity of foreign state defendants can be overcome only through the stricter nexus requirement in § 1605(a)(3). In taking this position, the Court adopts Judge Tatel's persuasive reasoning in *De Csepel v. Republic of Hungary*, 859 F.3d at 1107–08.

transferred the money received from the sale of the house to the Taiwan Government Revenue fund, and the Government of Taiwan has used money from this fund to purchase various products and services from the United States. (Dkt. No. 6 at 3–4.) But even assuming that items purchased from the general fund could be considered "property exchanged for [the expropriated] property," Plaintiffs do not adequately allege that most of the items are "present in the United States." 28 U.S.C. § 1605(a)(3). Rather, given that those items include equipment for national defense, software, and medical equipment—which Plaintiffs describe as procurements and exports—they are presumably now located in Taiwan for use by the Government and Ministry.

The only property that Plaintiffs actually allege to be "present in the United States" are oil fields in Texas, which Plaintiffs claim a state-owned energy corporation—CPC Corporation—purchased using money from the Taiwan Government Revenue fund. (Dkt. No. 6 at 4–5.) However, Plaintiffs have merely repeated an allegation from the Complaint (Compl. ¶ 3(d)(iii)), which the Court already deemed insufficient (Dkt. No. 5 at 3). "Plaintiffs do not specifically allege that property presently owned by [CPC Corporation] is somehow derived from the expropriated property, and they cite no authority that would permit the Court to infer such traceability." *Freund*, 592 F. Supp. 2d at 560. Furthermore, any such property is allegedly owned by *CPC Corporation*—an instrumentality of Taiwan—and present in the United States in connection with the *instrumentality's* commercial activities. *See Weininger v. Castro*, 462 F. Supp. 2d 457, 498 (S.D.N.Y. 2006) (classifying state-owned banks and corporations as "instrumentalities" under the FSIA). But Plaintiffs have not adequately alleged that this property is present "in connection with a commercial activity carried on in the United States *by the*

*foreign state*." 28 U.S.C. § 1605(a)(3) (emphasis added).[2]

Accordingly, Plaintiffs have failed to satisfy the nexus requirement of the expropriation exception.[3] Because no exception to the FSIA is applicable here, the Defendants are immune from suit, and the Court lacks subject matter jurisdiction over this action.

**IV. Conclusion**

For the foregoing reasons, Plaintiffs' claims against the Government of Taiwan and the Ministry of National Defense of Taiwan are DISMISSED under Rule 12(h)(3) for lack of subject matter jurisdiction.

The Clerk of Clerk is directed to close this case.

SO ORDERED.

Dated: January 4, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTIES BY CHAMBERS*

---

[2] There is a strong presumption in the context of the FSIA that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such," and the activities and property ownership of one should not be imputed to the other. *Arch Trading Corp.*, 839 F.3d at 201 (quoting *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626–27 (1983)). It is possible to rebut this "presumption of legal separateness," but to do so plaintiffs bear the burden of satisfying a specific test. *See id.* at 200–01. Plaintiffs here have not attempted to demonstrate that the property of CPC Corporation should be treated as the property of the foreign state itself.

[3] Because the Court concludes that it lacks subject matter jurisdiction on this basis, it need not determine whether Kohn Yu Kuo was a dual national of Taiwan and the United States at the time of the expropriation, or whether any such dual nationality rendered the expropriation a domestic taking (*i.e.*, not a violation of international law). *See Comparelli v. Republica Bolivariana De Venez.*, 891 F.3d 1311, 1322–23 (11th Cir. 2018); *Bahgat v. Arab Republic of Egypt*, 2015 WL 13654006, at *6 (S.D.N.Y. Mar. 31, 2015); *Wahba v. Nat'l Bank of Egypt*, 457 F. Supp. 2d 721, 731–32 (E.D. Tex. 2006).